IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

David Patrick Worrell, #02584-007, )  C/A No. 0:09-641-HMH-PJG

          )

      Petitioner, )

          )

  vs.        )  **REPORT AND RECOMMENDATION**

          )

Darlene Drew, Warden, FCI Bennettsville, )

          )

      Respondent. )

_____ )

The plaintiff, David Patrick Worrell ("Worrell"), a self-represented federal prisoner currently housed at FCI-Bennettsville of the Federal Bureau of Prisons ("BOP"), filed this habeas corpus action pursuant to 42 U.S.C. § 2241. In his Petition, Worrell contends that the respondent abused her discretion in failing to immediately consider Worrell's request to be considered for transfer to a residential re-entry center ("RRC"),[1] arguing that the respondent's position that the decision concerning Worrell's RRC placement will not be made until seventeen to nineteen months from his release date contravenes applicable law. Worrell also challenges the custody score contained in his prison file, which he contends impacts his eligibility to be transferred to a lower security institution.

This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment.[2] (Docket Entry 16.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible

---

[1] The court notes that an RRC was formerly referred to as a "community corrections center" ("CCC").

[2] The respondent's motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The respondent presents matters outside the pleadings in support of her motion under Rule 12(b)(6); therefore, the court is treating the respondent's motion as one for summary judgment pursuant to Rule 56. See Fed. R. Civ. P. 12(d).

_PJG_

consequences if he failed to respond adequately to the respondent's motion. (Docket Entry 17.) Worrell filed a response in opposition. (Docket Entry 19.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion should be granted.

## BACKGROUND

Worrell is serving a 151-month sentence for possession with the intent to distribute cocaine and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). (See Sentence Monitoring Computation Data, Docket Entry 16-1.) With his sentence credit for good conduct, Worrell's projected release date is March 17, 2014. (Id.) In response to Worrell's request for immediate consideration for placement in an RRC, the respondent indicated that Worrell "will be considered for one year placement at a[n] RRC when [he] is within 17 to 19 months of release." (Docket Entry 16-3 at 1.) This decision was upheld at each level of the administrative process.

Worrell contends that the respondent erred in failing to immediately consider his request for placement in an RRC "pursuant to the factors set forth in 18 U.S.C. § 3621(b), and without reference to certain BOP policies (28 C.F.R. §§ 570.20 and 570.21)." (Am. Pet. at 1, Docket Entry 12 at 1.) Further, Worrell agrees that after Worrell filed the instant Petition, his case manager amended Worrell's custody classification score. However, it appears that Worrell is still pursuing this claim by arguing that although his custody score was corrected and now reflects that he is a minimum custody prisoner, he is being held in a medium security prison. Worrell contends that he should be at a "facility commensurate with [his] security and program needs." (Worrell Aff. ¶ 2, Docket Entry 19-1; see also Mem. Opp'n Mot. Summ. J. at 2-3, Docket Entry 19 at 2-3.) Accordingly, Worrell's second claim appears to challenge BOP's decision to retain him in a medium security facility rather than transfer him to a lower security facility.

PJG

# DISCUSSION

## A.      Rule 12(b)(1) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the

complaint fails to state facts upon which jurisdiction can be founded.  It is the plaintiff's burden to

prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the

issue, and may consider evidence outside the pleadings without converting the proceeding to one for

summary judgment."  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d

765, 768 (4th Cir. 1991).

## B.      Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party

who fails to make a showing sufficient to establish the existence of an element essential to that

party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving

party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."

Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once

the moving party makes this showing, however, the opposing party may not rest upon mere

PJG

allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while

the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow

the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the

requirement of liberal construction does not mean that the court can ignore a clear failure in the

pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of

a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th

Cir. 1990).

**C.      Habeas Corpus Generally**

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality

or duration of his custody. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). The sole remedy

in federal court for a prisoner seeking restoration of good time credits or seeking to invalidate his

disciplinary conviction is a writ of habeas corpus. See Edwards v. Balisok, 520 U.S. 641 (1997);

Preiser, 411 U.S. 475. Moreover, a petition for habeas corpus under § 2241 is the proper method

to challenge the computation or execution of a federal sentence. See United States v. Little, 392 F.3d

671, 679 (4th Cir. 2004) (citing In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (*en banc*));

United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989).

**D.      Subject Matter Jurisdiction**

The respondent first contends that Worrell is not challenging the fact or duration of his term;

rather, his claims relate to the conditions of his confinement. The court observes the United States

Court of Appeals for the Fourth Circuit has not addressed this issue with regard to either of the types

of claims presented here; however, persuasive authority from other circuits exists. With regard to

Worrell's challenge to the respondent's failure to immediately consider his request for RRC

PJG

placement, courts have held that a challenge to a BOP decision governing placement in an RRC is a proper challenge to the execution of the inmate's sentence and is therefore properly brought pursuant to § 2241. See Levine v. Apker, 455 F.3d 71, 77-78 (2d Cir. 2006); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005). These courts observed that confinement in a traditional federal prison is "qualitatively different" from community confinement, and thus justifies utilization of § 2241 for challenging BOP decisions regarding placement in an RRC. Woodall, 432 F.3d at 243-44; see also Levine, 455 F.3d 71, 78 (stating that the "petition challenges the place of his imprisonment, including the differences in the manner and conditions of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish CCCs from other BOP penal facilities"). However, courts have held that challenges to decisions pertaining to transfers between prisons generally do not qualify as challenges to the execution of a sentence and are therefore not properly brought pursuant to a § 2241. Pischke v. Litscher, 178 F.3d 497 (7th Cir. 1999) ("Habeas corpus cannot be used to challenge a transfer between prisons . . . unless the custody in which the transferred prisoner will find himself when transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about . . . 'a quantum change in the level of custody.' "); Levi v. Ebbert, 353 Fed. Appx. 681 (3d Cir. 2009) (unpublished) (holding that a petitioner's claims challenging his custody classification score and requesting that he be transferred to a prison camp or low-security prison were not cognizable in a § 2241 petition); see also Woodall, 432 F.3d at 243 (differentiating CCC placement decisions from other prison transfers and holding that placement in a CCC represents more than a simple transfer and "crosses the line beyond a challenge to, for example, garden variety prison transfer" such that it is properly raised under § 2241).

*PJG*

Based on this persuasive authority from other circuits, the court finds that to the extent that Worrell's claims challenge the respondent's actions concerning Worrell's RRC placement, they are properly brought as a habeas corpus action pursuant to 28 U.S.C. § 2241. However, to the extent that Worrell is challenging BOP's failure to transfer him to a lower security facility or a prison camp, this claim falls under the umbrella of a garden variety prison transfer which is not cognizable under § 2241.[3]

**E.      RRC Decision**

**1.      Community Placement Generally**

Community placement is provided for by 18 U.S.C. § 3624(c)(1), which provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1) (as amended by the Second Chance Act of 2007, eff. Apr. 9, 2008).

Designation of such placement is based upon consideration of the following five factors, as provided in the general statute regarding prison placement and transfers:

(1)      the resources of the facility contemplated;
(2)      the nature and circumstances of the offense;
(3)      the history and characteristics of the prisoner;
(4)      any statement by the court that imposed the sentence-
      (A)      concerning the purpose for which the sentence to imprisonment was determined to be warranted; or

---

[3] Moreover, even if this claim were properly brought as a habeas corpus action, the court finds that Worrell has not exhausted his administrative remedies with regard to this claim. Further, Worrell has not demonstrated cause or prejudice for this failure; therefore, dismissal of this claim would be appropriate. See Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir. 2001); see also Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 490-91 (1973) (stating that exhaustion also required under 28 U.S.C. § 2241); 28 C.F.R. §§ 542.10 et seq. (detailing BOP's administrative grievance process).

> > (B)     recommending a type of penal or correctional facility as appropriate;
> >          and
> (5)     any pertinent policy statement issued by the Sentencing Commission . . . .

18 U.S.C. § 3621(b).  Amendments by the Second Chance Act required BOP to issue new regulations to ensure that RRC assignments are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  18 U.S.C. § 3624(c)(6).  Both the interim rules adopted by BOP, see 28 C.F.R. §§ 570.20-.22, and the statute require BOP to determine "on an individual basis" how much time, if any, each federal prisoner should spend at an RRC.  Further, they provide that the maximum amount of time that a prisoner can spend at an RRC is twelve months; however, there is no set minimum.  See 28 C.F.R. § 570.21 ("Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months").  "Under these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on the § 3621(b) factors."  Specter v. Dir., Fed. Bureau of Prisons, C/A No. 4:09-191-TLW, 2010 WL 883733, *5 (D.S.C. Mar. 5, 2010) (citing Skrzypek v. Cruz, C/A No. 08-6111 ADM/SRN, 2009 WL 465053, *2 (D. Minn. Feb. 24, 2009)).

Some courts have held that BOP may exercise its discretion to place a prisoner at an RRC for any portion of his or her sentence under § 3621(b), separate and independent from § 3624(c)'s specific requirements relating to re-entry of prisoners into the community.  See, e.g., Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008); Wedelstedt v. Wiley,  477 F.3d 1160, 1166 (10th Cir. 2007).  Moreover, the Second Chance Act amended § 3624(c) specifically to provide that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons

*PJG*

under section 3621" to designate any available correctional or penal facility as the place of a prisoner's confinement. 18 U.S.C. § 3624(c)(4).

After the passage of the Second Chance Act, BOP issued a memorandum dated November 14, 2008 that addressed circumstances where inmates request a transfer to an RRC when they are more than twelve months from their projected release date. (Docket Entry 16-7.) The memorandum instructed staff that they could not automatically deny an inmate's request for a pre-release transfer, but must give each request individualized consideration. (Id. at 2.) The memorandum provided guidance as to the timing of an RRC placement analysis based on the statutory factors. (Id.) The November 14 memorandum also noted that a memorandum issued April 14, 2008—which instructed staff to review inmates for pre-release placements seventeen to nineteen months before their projected release dates and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b)—remains in full effect. (Id. at 1; see also Docket Entry 16-5 at 2, 3.)

### 2.    Discussion

The parties agree that on April 1, 2009, in response to Worrell's request for immediate RRC consideration, the respondent indicated that Worrell would be considered for one-year placement at an RRC when he is within seventeen to nineteen months of release. (Docket Entry 16-3 at 1.) This decision was upheld throughout the administrative grievance process.[4] (Docket Entry 16-3.) Worrell argues that the respondent erred in failing to immediately consider the five statutory factors listed in 18 U.S.C. § 3621(b) in evaluating his request for immediate RRC placement. Specifically,

---

[4] Further, in support of dismissal, the respondent has submitted the Program Review Report for Worrell dated June 3, 2009. Although Worrell disputes the accuracy of this document, it also notes that Worrell's RRC placement will be reviewed seventeen to nineteen months prior to release. (Docket Entry 16-8 at 2.)

PJG

Worrell states that he is legally eligible for RRC placement at any time during his prison sentence and that the respondent's statement that he would be considered for one-year placement at an RRC when he is within seventeen to nineteen months of release amounts to an automatic denial of his request for RRC placement, which contravenes the requirements of § 3621(b). (Docket Entry 16-3 at 1); (see also BOP Mem. dated Nov. 14, 2008, Docket Entry 16-7 at 1); Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008).

In support of his argument, Worrell relies on the decision of the United States Court of Appeals for the Ninth Circuit in Rodriguez; however, this case does not avail Worrell. In Rodriguez, the Ninth Circuit held that BOP's regulations which categorically excluded inmates with more than ten percent of their sentence remaining was in contravention of § 3621(b), which requires federal prisoners to be considered for RRC placement on an individual basis after considering five factors. However, since the issuance of Rodriguez, BOP has promulgated new regulations that mandate individual consideration based on the § 3621(b) factors. 28 C.F.R. § 570.22.

Furthermore, Worrell has not shown that the respondent's decision to defer consideration of Worrell's RRC eligibility to a later date amounts to an automatic denial. The crux of Worrell's habeas claim appears to be that he wants a decision concerning his RRC placement immediately and does not want to wait until the last seventeen to nineteen months of his sentence to learn the result of the analysis BOP will ultimately conduct pursuant to § 3624(c). However, Worrell has failed to present any statutory or constitutional authority requiring BOP to immediately make a determination regarding his RRC placement. Skrzypek, 2009 WL 465053. Moreover, while BOP is required to review Worrell's institutional placement on an individual basis by considering § 3621(b)'s five factors, Worrell has cited no controlling authority requiring that those factors be immediately reevaluated every time a prisoner so requests. No showing has been made that BOP's decision

regarding Worrell's current place of incarceration violates any controlling statutory or constitutional provision, was the result of any categorical exclusion, or was determined based on anything other than § 3621(b)'s five factor analysis.[5]  See, e.g., id.

Based on the foregoing, Worrell has failed to identify any action taken by BOP in this matter that is unconstitutional or illegal; thus, he cannot demonstrate that "[h]e is in custody in violation of the Constitution or law or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Absent a showing that BOP's decision regarding his current place of incarceration contravenes controlling law, Worrell's claim essentially boils down to dissatisfaction with a "garden variety prison transfer" decision, over which this court lacks jurisdiction.  See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005); Levi v. Ebbert, 353 Fed. Appx. 681 (3d Cir. 2009) (unpublished). Accordingly, Worrell is not entitled to habeas corpus relief.

## RECOMMENDATION

Based on the foregoing, the court recommends that the respondent's motion (Docket Entry 16) be granted and that Worrell's Petition be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 15, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[5] The respondent has also shown that the United States Parole Commission has lodged a detainer against Worrell based on a parole violation warrant.  (Docket Entry 16-9; see also Sentence Monitoring Computation Data, Docket Entry 16-1 at 3.)  Section 10(f) of Program Statement 7310.04, entitled LIMITATIONS ON ELIGIBILITY FOR ALL CCC REFERRALS, provides that "Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement" "shall not ordinarily participate in CCC programs."  (Docket Entry 16-6 at 10-11.) Warrants and detainers have been held to be sufficient grounds to deny a federal prisoners RRC placement.  See Bell v. Chapman, C/A No. 4:09-CV-542-Y, 2010 WL 1644808 (N.D. Tex. Apr. 22, 2010) (unpublished); Wright v. Lappin, C/A No. 1:09CV122, 2009 WL 347777 (N.D. W. Va. Feb. 4, 2009) (unpublished).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).